We'll hear next from counsel in in re John Hammons 23-203. May it please the court. Good morning, your honors. I'm Nicholas Saludici representing John Q. Hammons Fall 2006 LLC and its 75 affiliated debtors in this appeal. There are two issues before the court today. First, whether 28 U.S.C. section 1938-6 is unconstitutional because it violates the uniformity requirement of the Bankruptcy Clause of the Constitution. And second, whether the 2017 amendment to 1938-6 was improperly applied retroactively. I'll address the non-uniformity issue first and then address the attractivity issue. Your honors, my clients paid an additional $2.5 million in quarterly fees for one reason. They filed their bankruptcy cases in Kansas and not North Carolina or Alabama. This is a consequence of a non-uniform law that charges debtors quarterly fees based solely on the state in which they file a bankruptcy case. Section 1938-6 is unconstitutionally non-uniform and has been since its inception in 1986 for two reasons. First, it mandates quarterly fees be paid by debtors in only 48 of the 50 states without any justification whatsoever. And second, any argument that 1938-6 is uniform because it uniformly implements fees within the U.S. trustee districts is based on the flawed tautology that is permissible for Congress to treat debtors differently if Congress already unconstitutionally treats those debtors differently. Section 1938-6 is the statute that caused this injury, but it is inextricably intertwined with a larger constitutional issue. Debtors in 48 of the 50 states operate under the U.S. trustee program. Debtors in Alabama and North Carolina do not. They operate under the Bankruptcy Administrator Program. 1938-6 only applies to U.S. trustee districts and does not apply to B.A. districts. Can I just jump ahead to ask you, what is the inevitable remedy that you're asking? That we declare that this discrepancy is unconstitutional? Do we pick sides and declare that you ought to go with the trustee program rather than the administrator program? Do we avoid that, say it's unconstitutional, but we're not going to declare the bankruptcy code unconstitutional? We're simply going to give money relief in this case? What is the remedy that you ask for and what is the remedies that we have available to us? Yes, Your Honor. We've asked this court for the only remedy that can ameliorate my client's harm, which is to declare that 1938-6 is unconstitutional and to award my client the $2.5 million it has been damaged by this unconstitutional statute. But the remedy here is that you are not asking for a declarative judgment decree that is unconstitutional. You're simply asking for money. And the justification for that will have to be, however, that this discrepancy is unconstitutional. Yes, the whole thing would need to be that the statute is unconstitutional and the remedy therefore would be returning the money to my client. So is that just dangled in? We just say it's unconstitutional, but we're not going to enjoin one statute or the other or, God forbid, the entire bankruptcy code. We're simply going to give you your money and the next guy will get his money and the next guy will get his money. And pretty soon Congress will say this is enough and they'll remedy it? How does this all play out? Sure, Your Honor. I think the court could actually look to what the Ninth Circuit did in St. Angelo is instructive on this. The court in St. Angelo saw that North Carolina and Alabama were about to join the U.S. trustee program or had a deadline to do it. And they struck down that statute that delayed North Carolina and Alabama from joining the U.S. trustee program. Congress instead implemented a new statute that further delayed it and then eventually got rid of the requirement altogether. Even the U.S. trustee concedes in its brief that this court likely does not have the authority to force North Carolina and Alabama into the U.S. trustee program. What we're asking the court for today is the only remedy that will ameliorate my client's harm because even if this court were to hold that the two systems are unconstitutional and they are, that would do nothing to ameliorate my client's injury. I understand you want damages. Do you think that the damages, the amount that you were overcharged, you believe, because of the discrepancy is done because of the first three quarters of 2018 or are there ongoing damages that your client is going to continue to suffer? My client will continue to suffer damages as being part of this unconstitutionally non-uniform system that was created without any justification. But as far as the actual amounts of disbursements, the procedural posture of this case is that it's largely wrapped up and we don't have many disbursements left to make. The majority of the disbursements were made within the first three quarters of 2018. So as a remedy, you have decided only to ask for that fixed amount and that you're not asking for any kind of a equitable decree about long-term adjustments. That is correct, your honor. The United States trustee... Mr. Zlutnicky, before you move on, I wanted to interrupt and ask you one question. I had thought generally from your opening brief that you were arguing in essence that not only was 938-6 unconstitutional, but hearkening back to St. Angelo, all of those amendments that exempted North Carolina and Alabama from joining the trustee system were themselves unconstitutional as a violation of the bankruptcy clause. And so my question, I have two questions. One is, am I correct that that is part of your argument? And secondly, you had a footnote in your reply brief, footnote eight, and if you don't have it handy, there's no need to answer my question, but I was rather confused by it because it seemed to me that you were maybe drawing back from a challenge to the fact that North Carolina and Alabama had not, or had been exempted from the trustee system. So I didn't know if you were continuing to argue that, if that had been your argument. Yes, your honor. We've challenged both. We've challenged that the statute has been unconstitutional from the outset and that the system that treats debtors differently based solely on the state in which they file without any justification is unconstitutional, just as the court held in St. Angelo. As far as footnote eight, what we were referring to is the remedy that we were seeking. We're not asking this court to hold that Alabama and North Carolina have to join the U.S. trustee program immediately. The U.S. trustee's office points out that it seriously doubts that this court has the authority to But our argument is the remedy that we're seeking is narrow, and it is the only remedy that will ameliorate our clients. Well, if this is a narrow remedy, I'd hate to see a broad one. What if, here's a hypothetical for you. What if Congress decides in light of any disposition that might be entered in our case, that they're going to amend the trustee main bankruptcy act and say that anybody, this is the main bankruptcy law. 48 states have chosen it. If two have not, if anyone else wishes to go the alternative that Alabama and North Carolina have done, you may do so. It's your choice. And so it is uniform across the whole country that here's our main approach, but you all have this other approach if you want to follow it. Would that make it uniform? Well, your honor, what your honor is suggesting is sort of similar to how bankruptcy appellate panels work. Bankruptcy appellate panels exist in certain circuits. Some circuit courts have chosen not to implement BAPs. The difference though is that here, the trustee or any party has the opportunity to opt out of being part of the bankruptcy appellate panel. We certainly didn't have the option to opt out of being in the U.S. trustee program and paying quarterly fees. The issue is that we didn't have a choice. Well, apparently you did. I thought you had a choice on where you filed initially. We had a choice on where we could have filed our bankruptcy case. Well, we had a choice on where to file the case, but we didn't have a choice that if we filed in Kansas, we were going to be subject to the U.S. trustee program, just like the other 47 states that are part of the U.S. trustee program. The core problem here is that you're not, you may not be a really good party. You may not have a real good client to present that because your client, in fact, did have that choice, but proceed. I want to hear the rest of your argument. Your Honor, the trustee here cites the Blanchett for the proposition that geographic uniformity is not an absolute requirement for a bankruptcy law to be constitutional. This proposition is not incorrect. It is simply incomplete. The Blanchett court recognized that the Constitution affords Congress some flexibility when creating bankruptcy laws, but Blanchett clearly defined the scope and the limits of this flexibility. A geographically non-uniform bankruptcy law may be constitutional if and only if three conditions are met. First, Congress must have identified a geographically isolated problem. Second, Congress must have fashioned a statute to address that geographically isolated problem. And third, the law must apply uniformly to a defined class of debtors. And in Blanchett, the court focused on the fact that the rail transportation crisis that in the region impacted by the statute. Congress saw the problem that existed in only one region of the country and enacted a statute that was tailored to address that geographically isolated problem. The Blanchett court also held that the law applied uniformly to a class of debtors, which was all railroads in the United States, not merely all railroads in the region. And so this court, in order to look at a geographically non-uniform statute that creates 48 states into the UST program and two into the bankruptcy administration program is what is the geographically isolated problem that Congress was trying to fix? And here, there is no argument about Congress's justification to separate those debtors into districts because Congress provided none. It never has. And let us address that issue, not on the decision to allow a difference between trustees and administrators in those two systems, but rather the decision to raise the quarterly fees to trustees. Under Blanchett, I expect it's likely that Congress satisfied the Blanchett test that they established a particular need. The trustees were needing more money. That program needed the money. You needed to raise fees for it. My question is this. At that time, were the bankruptcy administrators similarly in a financially difficult situation and did they need the funds too, or were they different in terms of their financial picture than the trustees were? Well, Your Honor, I think they were different in their financial picture. But I think the issue here is that that would be focusing on what Judge Clement and her dissent called a flawed tautology, that it's constitutional to treat debtors differently if we're already unconstitutionally treating debtors differently. It's important to remember that both Circuit City and Buffay's cited St. Angelo with approval for the proposition that is unconstitutional to separate debtors into UST districts and BA districts without any justification whatsoever. Neither of those cases awarded the relief that you're asking. Is that right? That's correct, Your Honor. With the canon of constitutional avoidance, why shouldn't we just follow the same path that those two courts did? Because those courts narrowed their focus to the 2017 Amendment. Here, we've argued from the beginning that 28 U.S.C. 1938-6 and the dual system of UST programs and BA programs is unconstitutional. This court cannot and should not narrowly focus and avert its eyes from the core constitutional issue by focusing solely on the 2017 Amendment.  I would like to reserve my remaining amount of time for rebuttal. You can. Karen, let's stop this clock on the rebuttal. I do have one question. You're not going to be. This isn't intruding in your rebuttal time. You just mentioned that part of your answer to Judge Phillips is that you've always challenged not only the 2017 Amendment, but also 938-6 and the dual system. And I do think, although, and I think you've answered my question about the footnote on page 16, but I'm not sure that to the bankruptcy judge, you did argue that you were challenging the whole dual system from all those amendments that ultimately exempted North Carolina and Alabama from the trustee system. Did you forfeit that argument? And if not, where can I look to find that in your briefings in bankruptcy court? Your Honor, we did not forfeit that argument. We challenged the statute, not just the amendment. And I can refer, Your Honor, to Appendix Volume 71, pages 98-71 and 98-78, where we clearly challenged the 28 U.S.C. 1930 as a whole and not merely the 2017 Amendment. And our reply brief with the bankruptcy court, one only need to look to Appendix Volume 2 at 99-72, 73, 76, and 99-94. It is simply not correct to say that we limited our challenge in any way. And as the U.S. trustee says in its brief that we somehow first raised this in our reply brief, it's simply incorrect. If we raised an issue for the first time in our reply brief, which we did not, the U.S. trustee's remedy would have been to file a motion for leave to file a surreply to address a new argument, which the U.S. trustee failed to do. We don't enter this in the analysis from the beginning. Yeah, and just to make sure that we're on the same page, I don't think there's any question whatsoever that you challenge in bankruptcy court the constitutionality of 930-86. So that's not my question. So just to make sure we're on the same page. So what Mr. Sandberg's argument, as I understand it, is, well, 930-86 isn't unconstitutional. It solves a regional problem. In 48 states, there is a funding problem for trustees. There's not a funding problem for bankruptcy administrators in North Carolina and Alabama. And so it was a regional problem and a regional solution. And then your argument to us, I understand it is, well, that's sort of like saying, you know, you killed your parents and complaining that you're an orphan. Well, you're, you know, you are challenging the whole dual system. I just don't know that you would have preserved that argument in bankruptcy court by challenging the constitutionality of 930-86. I don't think 930-86 is the source of your problem. I think the source of your problem is all those amendments that ultimately exempted North Carolina and Alabama from being required to join the trustee system. Well, your honor, if I can respond to that briefly, the San Angelo court was looking at a challenge to 930-86 and properly saw a challenge to that statute as a challenge to the dual system in general. And held as a matter of law that having the dual systems of U.S.T. districts and B.A. districts is unconstitutional. It's like having a crumbling house sitting on top of a rotting foundation. You have to look at the original question. And the original question has to be, why are these 48 states and U.S.T. districts and why are North Carolina and Alabama and B.A. districts? And there's simply no justification for that whatsoever and never has been. Thank you, your honor. Okay. I appreciate you indulging me on that as well as my colleagues. Judge Phillips, do you have any additional questions? None. Thank you. Okay. Judge Bell, do you? No, but I would like Mr. Sandberg's response to that because I'm not very satisfied with Mr. Zuticky's response. So, not that you gave a response that was not accurate. I just didn't find it very fulfilling. So, I guess I'd like Mr. Sandberg to begin by addressing that very issue. Sure. Good morning. May it please the court. Jeff Sandberg for the United States. Addressing what's before the court and what's not. There's actually, there have been several shifts in what I think the debtors here are trying to argue. We understood their motion in bankruptcy court to be arguing the 2017 amendment is unconstitutional. In the reply brief, they brought in their opening brief in this court, they broadened it to 1930A6 is unconstitutional. As Judge Bacharach's question got at, that still is just addressing the fee statute and not the underlying dual systems. If we thought that the debtors had raised in bankruptcy court or raised in this court an argument that the two systems themselves were unconstitutional, we would have written a very different brief for you that would have talked about the reasons why the two systems exist and continue to exist. But that's not the challenge that he brought before you. He's now, you know, in light of the dissents that have come out and note they are dissents in the fourth and fifth circuits of questioning what the basis for the underlying two systems are. It seems debtors are now asking this court to rule that the two systems are unconstitutional, but you have no briefing before you on that. And he didn't, he didn't raise that argument in bankruptcy court and he didn't raise it in his opening brief. So let me, let me test that. I mean, just, if you just pulling at random his opening brief on page 12, I mean, the heading, the BAUST dichotomy results in separate fee structures, separate fee systems, and separate authority to impose fees. That's the heading. And then the subheadings, the U.S. trustee program creates non-uniform fees from its inception. And he proceeds to discuss at, at some considerable length, St. Angelo and the fact that there was under St. Angelo, this dual system that, that insulated two states from the trustee system. So I have a question about preservation perhaps, but I didn't, I mean, I didn't find it ambiguous that his opening brief was challenging the dual system. Well, we certainly did. I mean, I agree that that's the closest he came to suggesting there's some problem with the system, but this court, when it reviews the constitutionality of Congress's handiwork, it reviews statutes, not just ideas or concepts. And the only thing that the debtors asked you to do was strike down the fee statute. And, and the government in responding to that is telling you why this fee statute is constitutional. If he wants to say that section, you know, uncodified section of whatever law from 1990 or 2000 that extended the bankruptcy administrator program at the request of the judicial conference, which asked for the bankruptcy administrator program to be continued, he could have said that that should be struck down as constitutional. And I could have, in my brief, explained to you why the judicial conference, you know, asked for this program to continue and, and we could address that now. So as the case comes before this court, it's really a dispute about whether you can charge different fees across two different programs, the underlying structure of which hasn't been squarely challenged. Mr. Sembry, if we look at the complaint or the, the, the pleadings in the bankruptcy court, will we find that the relief requested was to somehow strike down the 200, 2017 sentencing, the 2017 fee statute, as opposed to asking us to strike down the bankruptcy system or to declare that the bankruptcy system is unconstitutional because it's not human. It's a little bit of a moving target that in their motion in bankruptcy court, they asked for an order that the 2017 amendment is unconstitutional. And as a remedy, they wanted their, that excess fees paid back by the reply brief. I think they said a six is unconstitutional, but we want our money back. And now before you on appeal and the reply brief, they're saying the whole two systems are unconstitutional. And what I want is my, what my money back. And that there's actually a very important point here, which is even if there is a question of remedy, they're not entitled to the remedy of getting their money back. The constitution, when the constitution applies and it requires equality or uniformity, as the Supreme court said in Morales Santana, the constitution is silent about how you achieve that equality or uniformity. It's a question of what Congress would have intended. And, and, and the court's goal is to not front to give effect to Congress's, you know, whatever the core purpose is in the program that needs to be made equal. And here for reasons I hope I can explain Congress has, has required equal fees between the U S trustee program and the bankruptcy administrator program since 2000, Congress clearly wanted there to be sufficient funding for the U S trustee program. It didn't want taxpayers on the hook for that. So if, if, if anything unconstitutional has happened here, the appropriate remedy would be for this court to say something unconstitutional has happened, but the remedy for that is not to defund the U S trustee program and put that on the shoulders of taxpayers. The U S trustee program shouldn't be punished for the fact that the judicial conference didn't implement the statute in lockstep with the U S trustee program. And then it would be for Congress to, you know, address the matter going forward. And that's exactly what the Supreme court did in Morales Santana. It didn't say because something unconstitutional happened, you get to choose which relief you want and so that, you know, you can have some benefit. You have to look to. I'm sorry. I didn't mean to interrupt you, but you were on the roll. So it's not that the remedy doesn't, the question of remedy, this is, this is a very important point. The question of remedy is not governed by the, the, the challenger's preference. It's, it's governed by Congress's intent. I get it. So, but, but let me, let me, and I'm sorry, let me answer your question. So, you know, there's only, there are several different ways. If there's inequality to equalize it, one is given this money back. Another remedy that I thought you were where you were going was to say, well, if Congress intended not to continue having a funding problem in 48 states, well, maybe it intended, of course, the original intent was to make North Carolina and Alabama part of this system. Now, our problem is we don't have jurisdiction to, we don't have the power to say North Carolina and Alabama, you join the system. Or to say, okay, well debtors, you know, if you, Chapter 11 debtors in North Carolina and Alabama, you need to, to pay the fees during this period, say from January 1, 2018 to October 1, 2018, to pay the same fees that John Hammonds had to pay. Those Chapter 11, we don't have jurisdiction over them. So, you know, you're right. In theory, the reality is our only power is to give Mr. Zlutnicky exactly the remedy that he's asking for. We don't have the power. That might, you know, if this court decided that were an appropriate remedy, I agree that that the court would have the power to do that. But like, let's take a step back here. You know, not, this is a very unusual case. They're complaining that the statute was correctly applied to them. And they're saying there's some other folks out there in Alabama, North Carolina, who, despite, I think Congress's evident intent, as recently reinforced by a 2021 clarifying amendment, same fees apply nationwide. Some other folks got an unlucky break. It's not clear, and indeed, Justices Thomas and Alito said, I'm not even sure how someone in this scenario would have standing because the law was correctly applied to them. Someone else got an unlucky break. I mean, it's not proper to afford a monetary remedy to these folks to whom the statute was properly applied, consistent with Congress's intent that quarterly fees be consistent nationwide. And the most that he can get is, you know, this court, of course, has the power to say something unconstitutional has happened if it thinks that that has happened. But a monetary relief would be wholly inappropriate here. And it's because the statute was correctly applied to him. And what happened was someone else got an undeserved and unexplained break. It's like saying, well, if you had made, if plaintiff, if you had made an argument under this different argument, I mean, under this different theory, if you had argued that 9386 had been incorrectly applied to you, then you wouldn't have been entitled to relief. That's not his argument. His argument is that it's unconstitutional under Article 1, Section 8, Clause 4. And if he's right about it, if he's right about that, he is entitled to a remedy. Now, maybe reasonable bias can differ on what the remedy is, but you can't say, well, the remedy is a declaration. The remedy is a declaration that he's correct on the law and that the law is unconstitutional. But he does not get a monetary remedy because Congress here would intend to fully fund the U.S. trustee program and to have equal fees nationwide. It would not intend for hundreds of millions of dollars to be refunded to debtors, thereby putting taxpayers on the hook for the cost of the program. And if I can just focus, I mean, there's a very basic statutory point here. There's so much discussion of remedy. Congress, in the text of A-7, which is the quarterly fee provision that governs the U.S. trustee program, provided for fees equal to those imposed in U.S. trustee program districts. The initial conference had proposed a statute that said- May impose fees equal, right? That's right. As contemporary Supreme Court precedent said, the mere words of the use may is a clue, but it's not itself determinative. Look at the Cortez-Bird-Chips case, for example, from 2000 at how much ink was spilled on deciding whether may there meant it was conferring discretion or whether it was mandatory. And the Supreme Court says, you have to look to the surrounding context. You have to look to the rest of the sentence. You have to look to Congress's purpose. In a sense, the Congress uses the word shall twice in the succeeding clauses, right? Yes, but here's an important point. I think the difference between- Okay, Liz, it's just a little hard, you know, both of those talking at the same time. But if Congress twice uses shall, and right before the first use of shall, they use may, isn't that another pretty significant textual clue that Congress knew that may means that you might do it. You don't have to do it. I'll agree it's another clue, but it's not dispositive here, and here's why. The judicial conference proposed this statutory language to Congress. Congress barely touched it. It did change, however, was judicial conference had asked for authority to charge fees comparable to the U.S. trustee program, and Congress said, no, no, equal, equal to. If you're going to have any authority to charge fees, it has to be fees that are equal to. And look here, what debtors are complaining about is not that the judicial conference exercised its supposed authority to charge no fees at all. It charged different fees. And however you read A7, there's no authority for the judicial conference to charge fees that are not equal to A6. In any event, Congress has since made clear in a clarifying amendment in the 2021 Act that it has intended all along for quarterly fees to be consistent across the two districts, and because some courts are starting to get very, you know, placing a lot of undue emphasis on may versus shall in the sense they have now said going forward, the text says shall, but it's not a substantive change. It's merely codifying what Congress had intended all along. Remember, this was about trying to fix any conceivable uniformity problem in the statute after St. Angelo, and Congress didn't want debtors to be able to come in and say there are disuniform fees and have another fight about it. And so this court, you know, properly tries to uphold the constitutionality of statutes, not to strike them down. To the extent there's any room to read May together with equal to, together with the statutory history, together with the clarifying amendment, together with the purposes of the statute to mean that the fees have to be equal, then I think this court is duty bound to uphold the constitutionality of the statute. The debtors are, I think, asking you to bend over backwards to uphold the statutory validity of what the judicial conference did, like because the judicial conference delayed the implementation of the fee increase, it must mean that that's what the statute means. But then turns around to say then that statute is unconstitutional. And I think that's got it backwards. Courts try to uphold the constitutionality of statutes and give statutes the meaning they need in order to do that. And you shouldn't instead say, well, let's look at what the judicial conference did and try to make that comport with the statute as much as we can, simply in order to strike it down. Yeah, I'm having really trouble, even if I credit everything you just said, I'm really just having trouble understanding how it's logical. And I don't mean that pejoratively, but here's my problem. It's not complicated. I mean, he's got 76 companies. They are unambiguously, as you pointed out, subjected to 938-6. They had to pay two and a half million dollars more for the 76 affiliated entities than if they had filed bankruptcy as they could have in North Carolina or Alabama. Now, maybe the judicial conference screwed up, but, you know, whatever. I mean, the problem is the judicial conference, whatever may means, maybe it means shall. But still, Congress would have delegated 938-7 to the judicial conference to impose these fees under your theory that would have been equal to the fees that would have been imposed under 938-6. Well, that problem never would have arisen if Chapter 11 debtors of North Carolina in Alabama had been subjected to 938-6. That's right, but there's no reason Congress can't have, you know, a different fee provision for different, the two different programs. I mean, there's U.S. Explain that, because that's, you know, that's why we're here is on that issue. So if, you know, Mr. Zlutnicky is going to say that's the whole point of his theory. Well, it's a creature of the history of the statute. Originally, fees were only charged in U.S. You're answering a question that was asked, you know, so my question is, how is the existence of this dual system allowing the bankruptcy administrators to exist in two states and not exist in 48 states? How is that duality, if it is properly presented to us, how is that consistent with Article 1, Section 8, Clause 4? Well, to begin with, Congress, there's the substantive power to promulgate substantive bankruptcy laws that's in the Bankruptcy Clause. And then there's the machinery and the trappings of the bankruptcy system, which are authorized by necessary and proper clause. Congress has followed a policy of deferring to judicial preference in many areas. It allows each, if you look at 157, the very start of 28 U.S.C. 157, it says each district court can decide for itself whether to have a bankruptcy court at all. Each circuit can decide whether to have a bankruptcy appellate panel. You can have local rules. You can have standing chambers orders. You can have a pilot program that begins in 18 judicial districts and then expands further. But when the judges in Alabama, North Carolina say it wasn't broken, don't fix it, Congress can say, OK, you don't, you know, we'll set a deadline. And eventually the deadline was further extended. But, you know, and I haven't written you a brief about whether it's constitutional for to prefer these administrative matters because he hasn't properly presented that. That's why I was asking you why it's constitutional. So Congress has the power under under Clause 18, you argue, under the necessary and proper clause to enact this. My question is, is this uniform? Well, it doesn't have to be uniform if the source of authority for it is the necessary and proper clause. And I'll analogize to the Commerce Clause, Gonzalez versus Raich, about whether Congress can regulate the intrastate, I think it was cultivation, maybe sale of marijuana. And Justice Scalia in a very learned current said, look, even though regulating intrastate marijuana is not commerce among the several states and therefore is not within the Commerce Clause power, it is sustainable under the necessary and proper clause to the extent you can draw a through line that says it's rationally related to the substantive power. And so you can reach intrastate conduct even though it's not within the Commerce Clause itself. And I would say so, too, here, as long as you can draw as long as what Congress is doing here is rationally related to a uniform substantive bankruptcy system. And here, no one disputes that the same bankruptcy code applies in every district. Note that the provisions we're talking about here are not the bankruptcy code. Judge Abell referred a few times the bankruptcy code. We're in Title 28 here, not Title 11. Title 11 applies equally to every district. And the bankruptcy administrators and U.S. trustees perform the same functions in their respective districts. And so I don't see what their argument that this is not a necessary and proper law would even look like. Thank you. Judge Abell, he's out of time. But do you have any questions, Judge Abell? Like I've said before, plenty. But I think that we'll have to sort this out through our panel. Thank you. Judge Phillips, do you have any questions for the appellate? OK, thank you. Let's see, Mr. Zlitkin, you have 51 seconds. Yes, Your Honor. So very briefly, on Appendix Volume 71, page 9878, the debtors respectfully request that the court determine B, that 28 U.S.C. 1930 is unconstitutional due to its violation of the uniformity clause. So we did bring up this issue in our very first motion that was filed with the bankruptcy court. Briefly on the remedy. But that doesn't challenge the unconstitutionality of that particular fee change. That doesn't challenge the unconstitutionality of the bankruptcy code or the unconstitutionality of the differentiation of trustees and administrators. Your Honor, a challenge to... We're back now just to the fees, which almost certainly can be justified under the three so maybe we just really limit it to that issue. Well, I think the problem with that, Your Honor, is that what is the geographically isolated problem that Congress was looking to solve? Here, it's a geographically isolated problem that Congress created. That Congress didn't create the rail transportation crisis that is at issue in Blanchett. Congress created this problem by separating debtors into U.S.T. districts and B.A. districts without any justification whatsoever. And it's important to remember that. There was never any justification provided by Congress or the United States trustee for why these separate programs exist and why we treat these debtors differently. Very briefly on remedy. Morales-Santana is completely... It's not analogous in any way. It is an equal protection argument under the Fifth Amendment. And the court specifically held that monetary damages were not an adequate remedy for that particular appellant. And so we don't believe that that's analogous to our case. Here, the relief that we're asking for is the injury that my clients were caused by being subjected to the system. And one final point.  You're a good... Both of you are very good lawyers and you'll take what's given to you. But I'm giving you an additional one minute and 26 seconds. I understand. Thank you very much, Your Honors. Thank you both for your zealous advocacy. Well presented. This matter will be taken under submission.